UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10429-RWZ

SOVEREIGN BANK

v.

INGEBORG SARACENO *et al.*

ORDER

March 9, 2012

ZOBEL, D.J.

This is an interpleader action filed under 28 U.S.C. § 1335 by Sovereign Bank ("Sovereign") asking the court to determine whether the United States or the Saraceno Defendants[1] is/are entitled to $43,353.17 allegedly subject to seizure by the United States in connection with an elaborate Ponzi Scheme orchestrated by Richard Elkinson. Before me is the United States' Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). Docket # 7.

## I. Background

Elkinson sought and received investments in a non-existent venture to manufacture uniforms and hats that supposedly had been contracted by state governments. In exchange, he promised to repay the investors their principal plus interest from the profits earned on the contracts. His scheme lasted from 1993 to 2009, but he ultimately pled guilty to eighteen counts of mail fraud committed between 2005

---

[1] Ingeborg Saraceno, the Saraceno Family Foundation, LLC; Kurt W. Saraceno; Trustees of the Dominic J. Saraceno Trust; Saraceno Properties, LLC, Susan Saraceno, Trustees of the Dominic J. Saraceno Trust, Saraceno Properties LLC, Susan Saraceno and Heidi A. Lawlor (herein, the "Saraceno Defendants").

and 2009. As a result of a series of loans made to Elkinson by the Saraceno Defendants, as of the fall of 2009, they were owed over two million dollars in overdue payments.

The Saraceno Defendants filed suit against Elkinson in the Massachusetts Superior Court. In this action they sought and received an attachment by trustee process of Elkinson's funds on deposit at Sovereign. The trustee summons, served on November 23, 2009, caught $50,117.22 which Sovereign removed from Elkinson's account(s) and placed in a general ledger account. On March 22, 2010, the Saraceno Defendants obtained a $2,137,850 judgment, and the state court issued an order charging Sovereign as trustee.

On December 24, 2009, the United States filed a criminal complaint against Elkinson, and on February 10, 2010, a federal grand jury indicted him on eighteen counts of mail fraud. As noted above Elkinson pled guilty to all counts on April 13, 2011. On November 18, 2010, the United States applied for a warrant to seize the Sovereign funds in the amount of $43,353.71 pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).[2] The warrant was supported by the sworn affidavit of an FBI special agent charged with investigating Elkinson's enterprise. The warrant was served on Sovereign on November 18, 2010. The bank then filed this interpleader action citing the "conflicting claims" of the Saraceno Defendants and the United States and requested that the court "[d]etermine which defendant, if any, is entitled to any portion of the

---

[2] Although this amount was less than the amount attached by the Saraceno Defendants, it was the amount the United States had probable cause to believe was traceable to Elkinson's criminal activity. The balance was paid to the Saraceno Defendants by Sovereign.

2

[Elkinson funds]." Docket # 3 at ¶¶ 38, 41.

The United States urges that judgment on the pleadings is appropriate and that it is entitled to the funds because: (1) its interest vested at the moment the funds were illicitly used, and in any event all it must show for a warrant to seize is that the property is forfeitable – ownership is irrelevant; (2) the Saraceno Defendants will have their opportunity to put the United States to its burden and assert their innocent purchaser defense at a forfeiture proceeding that will begin once the United States obtains possession of the funds; and (3) it would be inequitable to allow the Saraceno Defendants to a greater recovery than Elkinson's other victims.

The Saraceno Defendants oppose the United States' motion on the grounds that: (1) there are genuine issues of material fact; (2) the United States has the burden of proving the funds in question are properly subject to forfeiture; (3) they are innocent owners of the funds and therefore the funds are not subject to seizure; and (4) that they are entitled to the funds based on principles of equity because their efforts and resources secured the funds.

## II. Standard

"The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion. '[T]he trial court must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his favor.' Judgment on the pleadings under Rule 12(c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief." Asociacion De

3

Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores, 484 F.3d 1, 22-23 (1st Cir. 2005) (internal citations omitted). During the pendency of the parties briefing the present motion, they both filed answers to Sovereign's first amended complaint. The matter therefore is ripe for determination. Doe v. United States, 419 F.3d 1058, 1061 (9th Cir. 2005).

**III. Analysis**

Although the Saraceno Defendants contend there are disputed issues of facts, they do not identify any. In their answer they admit every material allegation. They argue that "the heart of the case — which defendant is entitled the funds – is in dispute," however, this question can be resolved as a matter of law and they fail to point to any specific dispositive facts in contest.

Pursuant to 18 U.S.C. §981 (Civil Forfeiture) and 18 U.S.C.§ 982 (Criminal Forfeiture), the United States sought and was granted a warrant, satisfying a magistrate judge that probable cause existed to seize the funds in question as related to Elkinson's money laundering operation. Docket # 10 Ex. B. The fact that Sovereign may have been holding these funds in trust for the Saraceno Defendants, by virtue of their state court attachment, is of no moment; the relevant inquiry is only whether the funds were properly subject to forfeiture. 18 U.S.C. § 981(a)(1); 18 U.S.C. § 982(a)(1).

The Fifth Amendment provides that "No person shall be ... deprived of life, liberty, or property, without due process of law." In Mathews v. Eldridge, 424 U.S. 319, 334-335 (1976), the Supreme Court held that the finding of a due process violation is dependent on the balancing of three factors: a private interest that will be affected by

government action; the risk of an erroneous deprivation of that interest through the procedures utilized and the probable value of such additional safeguards; and the government's interest in avoiding the burdens entailed in providing the additional procedures claimed. Although the government represents that it intends to initiate a civil forfeiture proceeding once it obtains custody of the funds, here, under either the criminal or civil forfeiture proceeding statutes, the Saraceno Defendants' will have an opportunity to claim these funds and assert any defenses. 18 U.S.C. § § 983(a)-(b); 18 U.S.C. §§ 853(h),(n). Therefore, adequate procedural safeguards are in place to prevent the erroneous deprivation of the Saraceno Defendants' alleged property.

**IV. Conclusion**

The United States' Motion for Judgment on the Pleadings (Docket # 7) is ALLOWED.

Judgment may be entered accordingly.

|  |  |
|---|---|
| March 9, 2012 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |